IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

ANGEL RODRIGUEZ RAMOS
12316 Middle Road
Silver Spring, MD 20906

JOSE LUIS MUNGUIA
12316 Middle Road
Silver Spring, MD 20906

MOISES MALDONADO
5921 Cherrywood Terrace, Apt. 102
Greenbelt, MD 20770

JUAN FRANCISCO MARTINEZ
5914 Cherrywood Terrace, Apt. 101
Greenbelt, MD 20770

JOSE PAZ REYES
11504 Elkin Street, Apt. 101
Wheaton, MD 20902

ELIO LIMA
8855 Garland Avenue, Apt. 12
Silver Spring, MD 20901

JOSE GRANADOS
1704 Westchester Drive
Silver Spring, MD 20902

ELMER ZAMORA
12316 Middle Road
Silver Spring, MD 20906

RUDHY ORELLANA
1813 Brick Circle
Fort Walton Beach, FL 32547

**FIRST AMENDED COMPLAINT**

Civil Case No. 1:15-cv-00633-TSC

PEDRO RAMIREZ
1222-A Frederick Pike
Winchester, VA 22603

       Plaintiffs,

v.

PARKINSON CONSTRUCTION
COMPANY, INC.
7826 Eastern Avenue, Suite 502
Washington, DC 20012

NIGEL PARKINSON
3039 44th Street
Washington, DC 20016

GOVERNOR'S HOTEL INC.
500 Grant Street, 50th Floor
Pittsburgh, PA 15219

GOVERNOR'S HOTEL COMPANY
500 Grant Street, 50th Floor
Pittsburgh, PA 15219

       Defendants.

## FIRST AMENDED COMPLAINT

### Introduction

1.    Defendants employed Plaintiffs as general construction laborers. Defendants did not pay overtime wages for thousands of Plaintiffs' overtime hours. Additionally, Defendants failed to pay Plaintiffs anything for hundreds of hours worked in 2015.

2

2.      Plaintiffs bring this action to recover damages for Defendants' willful failure to pay all wages legally due (both regular and overtime wages), in violation of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("WHL"), Md. Code, Lab. & Empl. Art., § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("WPCL"), Md. Code, Lab. & Empl. Art., § 3-501 *et seq.*

## Jurisdiction and Venue

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because all or some of Defendants have their principal place of business or personal residence is in this district.

## Parties

5.      Angel Rodriguez Ramos is an adult resident of Montgomery County, Maryland.

6.      Jose Luis Munguia is an adult resident of Montgomery County, Maryland.

7.      Moises Maldonado is an adult resident of Prince George's County, Maryland.

8.      Juan Francisco Martinez is an adult resident of Prince George's County, Maryland.

9.      Jose Paz Reyes is an adult resident of Montgomery County, Maryland.

10.     Elio Lima is an adult resident of Montgomery County, Maryland.

11.     Jose Granados is an adult resident of Montgomery County, Maryland.

12.     Elmer Zamora is an adult resident of Montgomery County, Maryland.

13.     Rudhy Orellana is an adult resident of Okaloosa County, Florida.

3

14.     Pedro Ramirez is an adult resident of Frederick County, Virginia.

15.     Defendant Parkinson Construction Company, Inc. ("PCC") is a Maryland corporation

with a principal place of business at 7826 Eastern Avenue, Suite 502, Washington, DC 20012.

PCC's resident agent for service of process is Nigel Parkinson, 7826 Eastern Avenue, Suite 502,

Washington, DC 20012.

16.     Defendant Nigel Parkinson is an adult resident of the District of Columbia. Mr. Parkinson

resides at 3039 44th Street, NW, Washington, DC 20016.

17.     Defendant Governor's Hotel Inc., is a Pennsylvania corporation with a registered office at

500 Grant Street, 50th Floor, Pittsburgh, PA 15219. Governor's Hotel Inc. is owned and operated

exclusively by Defendant Nigel Parkinson. Governor's Hotel Inc.'s president, treasurer and

secretary are all the same person: Defendant Nigel Parkinson.

18.     Defendant Governor's Hotel Company is a Pennsylvania limited partnership with a

registered office at 500 Grant Street, 50th Floor, Pittsburgh, PA 15219. The general partner in

Governor's Hotel Company is Governor's Hotel Inc. Defendant Nigel Parkinson controls

Defendant Governor's Hotel Company through his exclusive ownership and control over

Defendant Governor's Hotel Inc.

**Factual Allegations**

**Facts Concerning Defendants' Integrated Enterprise**

4

19.     In approximately 2006, Defendant Nigel Parkinson began planning the renovation and re-branding of a hotel formerly known as the "Governor's Hotel." The new hotel will be called the "Hotel Indigo."

20.     For purposes of constructing the "Hotel Indigo," Defendant Nigel Parkinson used his control of the corporate Defendants to ensure that all three operated as one commercial enterprise.

21.     On January 12, 2006, Defendant Nigel Parkinson created both Governor's Hotel Company and Governor's Hotel Inc., for the specific purpose of building the "Hotel Indigo."

22.     The registered owner of Hotel Indigo is Governor's Hotel Company.

23.     Defendant Nigel Parkinson is the owner, president, secretary and treasurer of Governor's Hotel Inc.

24.     Defendant Nigel Parkinson exercises exclusive control over Governor's Hotel Inc. and its subsidiaries, including controlling their operations and pay practices.

25.     Defendant Nigel Parkinson's company, Governor's Hotel Inc., is the general partner of Governor's Hotel Company.

26.     Defendant Nigel Parkinson exercised exclusive control over Governor's Hotel Company, including its operations, pay practices and the hours worked by its employees.

27.     Defendant Nigel Parkinson is also the owner, director, and resident agent of PCC, a mid-sized construction firm in the Mid-Atlantic region.

28.     Defendant Nigel Parkinson exercises exclusive control of PCC, including its operations and pay practices.

29.     Under the authority of Defendant Nigel Parkinson, the three corporate Defendants utilize each other's offices and property. For example:

     a.     Defendant PCC claims as its Pennsylvania office the property owned by Defendant Governor's Hotel Company, 123 N Highland Ave., Pittsburg, PA 15206: the "Hotel Indigo."

     b.     Defendant Governor's Hotel Inc.'s president, secretary and treasurer identify as their own address, Defendant PCC's Maryland office at 3905 Perry Street, Brentwood, MD 20722.

     c.     Defendant Governor's Hotel Company uses as its own address, Defendant PCC's Maryland office, 3905 Perry Street, Brentwood, MD 20722.

     d.     All defendants utilize the Maryland office of 3905 Perry Street, Brentwood, MD 20722 as their own.

30.     Defendant Nigel Parkinson frequently visited, supervised, inspected and reviewed the construction of the Hotel Indigo and Plaintiffs' work on behalf of all the Defendants.

31.     Defendant Nigel Parkinson had and exercised authority to hire and fire the employees of the three corporate Defendants.

32.     For example, Defendant Nigel Parkinson personally fired Plaintiff Jose Granados on May 5, 2015, approximately one day after Defendant PCC was served with the initial complaint.

**Facts Concerning Plaintiffs' Employment and Defendants' Pay Practices**

33.     Defendants employed Plaintiffs to perform general construction labor for Defendants.

34.     Plaintiffs' job duties were virtually identical. They included carpentry, drywall

installation, masonry and concrete work, and general construction labor.

35.     Defendants paid each Plaintiff their regular hourly rate for each hour worked, irrespective

of whether or not Plaintiffs worked more than 40 hours in any one workweek.

36.     Defendants frequently documented this practice on a single weekly paystub. For

example, see the paystub below. On this paystub, Plaintiff Jose Luis Munguia was paid for 58

hours — all at a rate of $20.00 per hour.

PARKINSON CONSTRUCTION CO., INC.                                                    3159

| PAY PERIOD 11/23/2013  CHECK DATE  11/29/2013       CHECK AMOUNT      *****891.65 |

|           | HOURS |        | AMOUNT   | DEDUCTIONS/BENEFITS |        | AMOUNT | YTD TOTAL |
| Regular   | 58.00 | 20.000 | 1,160.00 |                     |        |        |           |

TAXABLE GROSS                    1,160.00

| TAXES         | AMOUNT | YEAR-TO-DATE |
| FEDERAL       | 91.57  | 1,985.88     |
| SOC SEC       | 71.92  | 2,034.22     |
| MEDICARE      | 16.82  | 475.75       |
| 3.10% - Mar F | 88.04  | 251.56       |

| TOTAL BENEFITS | 0.00 | TOTAL DEDUCTIONS |           | 0.00 |
| JOSE LUIS  MUNGUIA SILVA |      |                  | YTD Gross | 32,810.00 |

TOTAL TAXES       268.35

37.     More recently, starting in approximately early 2014, Defendants changed their pay

practices so as to make their failure to pay overtime less obvious. Defendants began to issue

Plaintiffs two weekly paystubs: a) one for hours up until forty, and b) one for overtime hours.

The second check did not acknowledge the number of overtime hours. Rather, the amount paid in the second check equaled the number of overtime hours worked multiplied by the Plaintiffs' regular hourly rate.

38.     For example, see the below paystubs, issued for the same workweek to Plaintiff Jose Luis Munguia. In this workweek, Mr. Munguia worked 84 hours for Defendants. The 44 hours of overtime were paid in a second paycheck at his regular hourly rate of $20.00 per hour.

**PARKINSON CONSTRUCTION CO., INC.**                                                    4093

| PAY PERIOD 08/16/2014 | CHECK DATE | 08/22/2014 | CHECK AMOUNT | *****670.82 | | |
|---|---|---|---|---|---|---|
| | HOURS | AMOUNT | DEDUCTIONS/BENEFITS | | AMOUNT | YTD TOTAL |
| Regular | 40.00   20.000 | 800.00 | | | | |

| | TAXABLE GROSS | 800.00 | | | | |
|---|---|---|---|---|---|---|
| TAXES | AMOUNT | YEAR-TO-DATE | | | | |
| FEDERAL | 36.42 | 1,336.47 | | | | |
| SOC SEC | 49.60 | 1,884.80 | | | | |
| MEDICARE | 11.60 | 440.80 | | | | |
| Virginia | 31.56 | 569.50 | TOTAL BENEFITS | 0.00  TOTAL DEDUCTIONS | 0.00 | |
| TOTAL TAXES | 129.18 | | JOSE LUIS  MUNGUIA SILVA | | YTD Gross | 30,400.00 |

**PARKINSON CONSTRUCTION CO., INC.**                                                    4178

| PAY PERIOD 08/16/2014 | CHECK DATE | 08/22/2014 | CHECK AMOUNT | *****728.10 | | |
|---|---|---|---|---|---|---|
| | HOURS | AMOUNT | DEDUCTIONS/BENEFITS | | AMOUNT | YTD TOTAL |
| Regular | 0.00   0.000 | 880.00 | | | | |

| | TAXABLE GROSS | 880.00 | | | | |
|---|---|---|---|---|---|---|
| TAXES | AMOUNT | YEAR-TO-DATE | | | | |
| FEDERAL | 48.42 | 1,384.89 | | | | |
| SOC SEC | 54.56 | 1,939.36 | | | | |
| MEDICARE | 12.76 | 453.56 | | | | |
| Virginia | 36.16 | 605.66 | TOTAL BENEFITS | 0.00  TOTAL DEDUCTIONS | 0.00 | |
| TOTAL TAXES | 151.90 | | JOSE LUIS  MUNGUIA SILVA | | YTD Gross | 31,280.00 |

8

39.     Moreover, Plaintiffs estimate that each of them (all except for Jose Paz Reyes, Rudhy Orellana and Pedro Ramirez) was not paid for approximately 30 − 100 hours of work performed in 2015. Plaintiffs arrived at this estimation by comparing the hours recorded on their sign-in sheets with those that were reflected on Plaintiffs' paystubs.

40.     At all relevant times, Defendants designated Plaintiffs as Maryland employees.

41.     Plaintiffs were interviewed and hired for their positions at Defendants' Maryland office, located at: 3905 Perry Street, Brentwood, MD 20722 ("Maryland Office").

42.     Typically, Plaintiffs were required to pick up their paychecks at Defendants' Maryland Office.

43.     Regardless of the location of a specific work site, Plaintiffs were frequently called upon to pick up materials and equipment at various sites in Maryland.

44.     Regardless of the location of a specific work site, Plaintiffs were required to contact Defendants' Maryland office for any inquiries concerning company benefits such as health insurance.

45.     At all relevant times, Defendants had more than two employees, and the annual gross volume of Defendants' business exceeded $500,000.00.

46.     At all relevant times, Defendants had the power to hire and fire Plaintiffs, to control Plaintiffs' work schedule, and to set Plaintiffs' rate of pay.

47.     Defendants required Plaintiffs to sign in and out of the job site.

48.     Defendants provided Plaintiffs with the tools and materials needed for their work.

49.     At all relevant times, Defendants did not maintain true and accurate records of each hour, day, and week worked by Plaintiffs, as required by 29 C.F.R. § 516 and Md. Code, Lab & Empl. Art., § 3-424. Accordingly, the exact amount of hours worked by and wages owed to Plaintiffs will only be known through discovery.

50.     At all relevant times, Defendants were aware that they was legally required to pay Plaintiffs one and one-half times their regular rate for all hours worked in excess of 40 hours in any one workweek.

## Facts Specific to Each Plaintiff

### Angel Rodriguez Ramos

51.     Plaintiff Jose Luis Munguia was employed by Defendants from approximately October 2013 through March 2015.

52.     Plaintiff Angel Rodriguez Ramos was paid an hourly rate of $20 for all hours worked.

53.     Plaintiff Angel Rodriguez Ramos worked approximately 300 hours of overtime.

### Jose Luis Munguia

54.     Plaintiff Jose Luis Munguia was employed by Defendants from approximately March 2013 through April 2015.

55.     Plaintiff Jose Luis Munguia was paid an hourly rate of $20 for all hours worked.

56.     Plaintiff Jose Luis Munguia worked approximately 1,200 hours of overtime.

**Moises Maldonado**

57.     Plaintiff Moises Maldonado was employed by Defendants from approximately March 2014 through April 2015.

58.     Plaintiff Moises Maldonado was paid an hourly rate of $20 for all hours worked.

59.     Plaintiff Moises Maldonado worked approximately 825 hours of overtime.

**Juan Francisco Martinez**

60.     Plaintiff Juan Francisco Martinez has been employed by Defendants since at least 2010.

61.     Plaintiff Juan Francisco Martinez was paid an hourly rate of $20 for all hours worked.

62.     Plaintiff Juan Francisco Martinez worked approximately 750 hours of overtime.

**Jose Paz Reyes**

63.     Plaintiff Jose Paz Reyes was employed by Defendants from approximately February 2013 through August 2014.

64.     Plaintiff Jose Paz Reyes was paid an hourly rate an hourly rate between $14 and $20. For each hour worked in a workweek, Defendants paid Plaintiff Jose Paz Reyes the same hourly rate, irrespective of overtime.

65.     Plaintiff Jose Paz Reyes worked approximately 200 hours of overtime.

**Elio Lima**

66.     Plaintiff Elio Lima has been employed by Defendants from approximately October 2013.

67.     Plaintiff Elio Lima was paid an hourly rate of $12 for all hours worked.

68.     Plaintiff Elio Lima worked approximately 825 hours of overtime.

**Jose Granados**

69.     Plaintiff Jose Granados was employed by Defendants from approximately January 2013 through May 2015.

70.     Plaintiff Jose Granados was paid an hourly rate between $12 and $20 for all hours worked.

71.     Plaintiff Jose Granados worked approximately 700 hours of overtime.

**Elmer Zamora**

72.     Plaintiff Elmer Zamora was employed by Defendants from approximately 2007 through June 2015.

73.     Plaintiff Elmer Zamora was paid by Defendants an hourly rate of $20 for all hours worked.

74.     Plaintiff Elmer Zamora worked approximately 850 hours of overtime.

**Rudhy Orellana**

75.     Plaintiff Rudhy Orellana was employed by Defendants from approximately September 2014 through January 2015.

76.     Plaintiff Rudhy Orellana was paid by Defendant Governor's Hotel Company.

77.     Defendant PCC supplied Plaintiff Rudhy Orellana with the materials and tools necessary to complete his work.

78.     Defendant Nigel Parkinson interviewed and hired Plaintiff Rudhy Orellana.

79.     While working at the Hotel Indigo, Plaintiff Rudhy Orellana had to sign in and out of the job site together with all the other employees of PCC.

80.     Plaintiff Rudhy Orellana was supervised by the Defendants.

81.     Plaintiff Rudhy Orellana was paid an hourly rate of $25 for each hour worked.

82.     Plaintiff Rudhy Orellana worked approximately 450 hours of overtime.

**Pedro Ramirez**

83.     Plaintiff Pedro Ramirez was employed by Defendants from approximately September 2014 through January 2015.

84.     Plaintiff Pedro Ramirez was paid by Defendant Governor's Hotel Company.

85.     While working at the Hotel Indigo, Plaintiff Pedro Ramirez had to sign in and out of the job site together with all the other employees of PCC.

86.     Defendant PCC supplied Plaintiff Pedro Ramirez with materials and tools necessary to complete his work.

87.     Plaintiff Pedro Ramirez was supervised by the Defendants.

88.     Plaintiff Pedro Ramirez was paid an hourly rate of $20 for each hour worked.

89.     Plaintiff Pedro Ramirez worked approximately 400 hours of overtime.

90.     **Plaintiffs estimate that they are collectively owed approximately $80,000.00 in unpaid overtime wages.**

91.     **Plaintiffs estimate that they are collectively owed an additional $5,000.00 in unpaid wages.**

13

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

92.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

93.     Plaintiffs were "employees" of Defendants within the meaning the FLSA, 29 U.S.C. §

203(e)(1).

94.     Plaintiffs were "non-exempt" employees of Defendants within the meaning of the FLSA,

29 U.S.C. § 213.

95.     Defendants were "employers" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. §

203(d).

96.     The FLSA requires employers to pay non-exempt employees one and one-half times their

regular hourly rate for hours worked in excess of 40 hours in any one workweek. 29 U.S.C. §

207(a)(1).

97.     Defendants violated the FLSA by knowingly failing to pay Plaintiffs at least one and one

half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

98.     Defendants' violations of the FLSA were willful.

For their violations of the FLSA, Defendants are liable to Plaintiffs for unpaid overtime

compensation, an equal amount as liquidated damages, court costs, reasonable attorneys' fees

and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE WHL

99.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

100.    Defendants were "employers" of Plaintiffs within the meaning of the WHL, Md. Code, Lab. & Empl. Art. § 3-401(b).

101.    The WHL requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. Md. Code, Lab. & Empl. Art. § 3-415.

102.    Defendants violated the WHL by knowingly failing to pay Plaintiffs at least one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

103.    Defendants' violations of the WHL were willful.

104.    For their violations of the WHL, Defendants are liable to Plaintiffs for unpaid overtime compensation, an equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT III

### FAILURE TO PAY WAGES UNDER THE WPCL

105.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

106.    Defendants were "employers" of Plaintiffs within the meaning of the WPCL, Md. Code, Lab. & Empl. Art., § 3-501(b).

107.    The WPCL requires employers to promptly pay employees their wages "all compensation that is due to an employee for employment." Md. Code, Lab. & Empl. Art., § 3-501(c)(1).

108.    The "compensation" required to be paid by the WPCL includes overtime wages. Peters v. Early Healthcare Giver, Inc., 439 Md. 646, 654 (Md. 2014).

109.    Defendants violated the WPCL by knowingly failing to promptly pay Plaintiffs for all hours worked.

110.     Defendants also violated the WPCL by knowingly failing to promptly pay Plaintiffs at least one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

111.    Defendants' violations of the WPCL were willful.

112.    For their violations of the WPCL, Defendants are liable to Plaintiffs for three times the amount of the unpaid overtime and regular wages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against the Defendants, jointly and severally, on all counts, and grant the following relief:

a.      Award Plaintiffs **$255,000.00** in damages consisting of the following overlapping elements:

i.      unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

16

ii.     unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the WHL, Md. Code, Lab. & Empl. Art., § 3-427;

iii.    three times the amount of the unpaid overtime wages, pursuant to the WPCL, Md. Code, Lab. & Empl. Art., 3-507.2;

iv.     three times the amount of the unpaid regular wages, pursuant to the WPCL, Md. Code, Lab. & Empl. Art., 3-507.2;

b.     Award Plaintiffs pre-judgment and post-judgment interest as permitted by law.

c.     Award Plaintiffs reasonable attorneys' fees and expenses incurred in the prosecution of this action;

d.     Award Plaintiffs court costs; and

e.     Award any additional relief the Court deems just.

Date: 07/01/2015                    Respectfully submitted,

                                    /s/ Justin Zelikovitz, Esq.
                                    Justin Zelikovitz, #986001
                                    LAW OFFICE OF JUSTIN ZELIKOVITZ, PLLC
                                    519 H Street, NW
                                    Washington, DC 20001
                                    Phone: (202) 803-6083
                                    Fax: (202) 683-6102
                                    justin@dcwagelaw.com

                                    *Counsel for Plaintiffs*

17